JEANNE M. LEMAN v. STANDARD OIL COMPANY OF
INDIANA AND OTHERS.
EDWARD J. LEMAN v. SAME.
MARGARET ORR, RESPONDENT.[1]

February 13, 1953.

Nos. 35,696, 35,697.

[1]Reported in 57 N. W. (2d) 814.

*Stone, Manthey & Carey,* for appellant Alex E. Leonard.

*Nye, Montague, Sullivan, Atmore & McMillan,* for appellant Standard Oil Company.

*M. J. Mulvahill* and *McCabe, Gruber, Clure, Donovan & Van Evera,* for respondents.

THOMAS GALLAGHER, JUSTICE.

These actions are the result of an automobile accident occurring on February 25, 1948, at 3 p. m., on trunk highway No. 53, between Hibbing and Duluth, when an automobile, driven by defendant Margaret Orr, collided head on with an automobile owned by defendant William James McHardy and driven by his wife, defendant Helen McHardy. Defendant Standard Oil Company of Indiana at the time was the owner of a large truck which had been parked on this highway just north of a bridge near where the cars collided. Defendant Alex E. Leonard was the driver of the truck. Plaintiff Jeanne M. Leman, a passenger in the Orr car, seeks damages for injuries sustained in the accident. Plaintiff Edward J. Leman,

her husband, seeks to recover damages resulting to him on account of his wife's injuries. The actions were consolidated for trial and appeal.

At the close of the trial, the court directed verdicts in favor of William James McHardy and Helen McHardy. Its instructions to the jury as to the other defendants, given over the objection of counsel for plaintiff, included the following:

1. "If from the evidence you find that Defendant Margaret Orr knew, or in the exercise of reasonable care should have known, that the truck was parked ahead of her on the highway for a length of time and for a sufficient distance to enable her to bring her automobile to a stop behind the truck and on her own side of the highway, then there can be no verdict against defendants Alex Leonard or the Standard Oil Company."

2. "If you find that the only evidence of negligence on the part of Alex Leonard and Standard Oil Company was that Leonard parked the truck in violation of the statute in failing to leave twenty feet of the traveled portion of the highway opposite the parked truck, but if you further find such parking was excusable or justifiable under all the facts and circumstances as brought out in the evidence, then said violation of said statute would not constitute a negligent act and there could be no verdict against Alex Leonard or Standard Oil Company based upon a violation of said statute."

3. "If from the evidence you find that the Standard Oil Company truck was parked on the north end of the bridge on its own side of the highway during all the time that Mrs. McHardy traveled the quarter of a mile south of the bridge, then, and in that event, your verdict should be in favor of the defendants Alex Leonard and Standard Oil Company."

Subsequent to the submission of the case, the jury returned for additional instructions because of its doubt as to the liability of Standard Oil Company and Alex E. Leonard in parking the truck on the highway. The following question was then asked the court:

"Juror No. 9: We were wondering if the law states if a car or truck is parked, if it is parked in violation of the law, and we feel that it was negligent in parking there, are we to disregard our own feelings if the driver stopped because he thought it was safer, if he was justified in stopping there, if he had any reasons of his own— then should we ignore our own feelings of negligence?"

In response to the question, the trial court stated:

"* * * I will have to read that instruction again. * * * If you find that the only evidence of negligence on the part of Alex Leonard and Standard Oil Company was that Leonard parked the truck in violation of the statute in failing to leave twenty feet of the traveled portion of the highway opposite the parked truck, but if you further find that such parking was excusable or justifiable under all the facts and circumstances as brought out in the evidence, then said violation of said statute would not constitute a negligent act, and there could be no verdict against Alex Leonard or Standard Oil Company based upon a violation of said statute."

The jury returned a verdict for Jeanne M. Leman against Margaret Orr in the sum of $21,500 and for Edward J. Leman against Margaret Orr in the sum of $3,000. It returned verdicts in favor of both Standard Oil Company and Alex E. Leonard.

Plaintiffs subsequently moved for a new trial on the ground, among others, that the instructions above described were erroneous. The trial court granted these motions, setting aside the verdicts in favor of Standard Oil Company and Alex E. Leonard and granting plaintiffs a new trial as to them. The order specified that the motion was granted exclusively because of errors of law occurring at the trial.

In a memorandum attached to and made a part of the order, the court stated:

"* * * in giving requested instruction number VI; as

"If from the evidence you find that the Standard Oil Company truck was parked on the north end of the bridge on its own side of

the highway during all of the time that Mrs. McHardy traveled the quarter of a mile south of the bridge, then in that event your verdict should be in favor of the defendants Alex Leonard and Standard Oil Company.' "

"'* * * this Court predicated the instruction upon" a statement of the supreme court in the McHardy case[2] (which arose out of the same accident). "In the instant cases the evidence was not necessarily the same," and "The Court believes that this instruction misled the jury and practically precluded them from bringing in a verdict against the Standard Oil Company, even if the jury had found that the illegal parking of the Standard Oil truck at the north end of the bridge was the proximate cause of plaintiff's injuries.

\* \* \* \* \*

"It is clear to this Court that the Standard Oil truck was parked at the north end of the bridge in violation of statute, M. S. A., paragraph 169.32, and that it was prima facie negligent. This Court feels that this accident would not have happened if the driver of the Standard Oil truck had not so parked, and the jury could well have found that this violation of law was the proximate cause of the accident, but was limited in its determination of this matter by instruction number VI given by the Court. For this reason alone, this Court believes that a new trial should be granted, and it is not necessary to discuss other assignments of error."

The physical facts relative to the highway, bridge, approaches, guardrails, and terrain are fully set forth in McHardy v. Standard Oil Co. 231 Minn. 493, 44 N. W. (2d) 90. In the instant case, defendant Alex E. Leonard testified that he was driving the Standard Oil truck south on highway No. 53 shortly prior to the collision; that when about 25 feet north of the north end of the bridge on highway No. 53, which passes over the Cloquet river, he observed a car (the McHardy car) at the crest of a hill about a quarter of a mile south of the bridge; that, although there was adequate room for his truck and the oncoming car to safely pass each other on the

---

[2]McHardy v. Standard Oil Co. 231 Minn. 493, 44 N. W. (2d) 90.

bridge, he decided it would be safer to stop north of the bridge and allow this car to pass over it before starting to bring his truck across; that he thereupon proceeded to turn back on the blacktop (from which he had moved to permit another car to pass) and went forward at a "crawling" speed until but eight to ten feet north of the north end of the bridge; that he brought the truck to a stop at that point with its right wheels off the blacktop on the shoulder close to certain guardrails on the west side of the highway; that a distance of 14½ feet clearance was left between the left side of the truck and the east edge of the blacktop;[3] that in making the described movements he at no time observed any car coming from his rear until the McHardy car was almost abreast of the truck; and that in his rear-view mirror he then observed a car (the Orr car) swerve to the left in the path of the McHardy car.

Mrs. Helen McHardy, the driver of the northbound car, testified that she first observed the truck in a stationary position north of the bridge after she had passed the crest of a hill a quarter of a mile to the south and that she was already on the bridge when she first observed the Orr car as it made the turn some 800 feet from the bridge. It is not clear from her testimony how far beyond the crest of the hill she had passed when she first noticed the truck. The collision occurred a few feet north of the truck when the Orr car endeavored to pass the truck to the left and, in so doing, went into the east lane of the highway directly in the path of the McHardy car.

---

[3]M. S. A. 169.32 provides:

"Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least 20 feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available from a distance of 200 feet in each direction upon such highway."

Margaret Orr testified that when she first saw the truck she was rounding a curve approximately 800 feet to the north of the bridge; that at that time the truck was moving south about a block ahead of her car; that she was traveling 40 to 45 miles an hour; that it was apparent from the first time she saw the truck that its speed was slower than hers; that, observing that the truck was about to stop, she first applied her brakes some 225 feet north of the bridge; that she first turned her car onto the right shoulder, where it started to skid because of ice thereon; that she then turned sharply to the left to pass the truck; and that thereafter there was a crash but that she never saw the McHardy car prior thereto.

Plaintiff Jeanne M. Leman, a passenger in the Orr car, testified that she first saw the truck when the Orr car entered the curve described; that it was then about 200 feet ahead of the Orr car; that she saw it in the act of stopping directly in front of the Orr car; that she next recalls hearing a gasp; that the Orr car then was turned to the right and immediately thereafter "wrenched" back to the left when the crash occurred.

Laura Devall, another passenger in the Orr car, testified that she first saw the truck at the curve; that it was then about 300 feet ahead moving at about the same rate as the Orr car; that when she next looked the distance between the Orr car and the truck had been cut one-half; that someone then said "Look" and she saw the truck stopping but never saw it actually stop before the crash occurred.

On appeal plaintiff claims that the instructions above set forth were erroneous and deprived the jury of its right to pass upon the conflicting testimony with reference to the parking of the truck at the point in question. We shall discuss each instruction separately in determining the issues presented here.

■ The first instruction complained of was that:

"If from the evidence you find that Defendant Margaret Orr knew, or in the exercise of reasonable care should have known, that the truck was parked ahead of her on the highway for a length of

time and for a sufficient distance to enable her to bring her automobile to a stop behind the truck and on her own side of the highway, then there can be no verdict against defendants Alex Leonard or the Standard Oil Company."

We believe this instruction was correct. It is in accord with numerous decisions of this court in cases involving similar facts. Medved v. Doolittle, 220 Minn. 352, 19 N. W. (2d) 788; Geisen v. Luce, 185 Minn. 479, 242 N. W. 8. The same instruction was approved in the McHardy case above referred to. It would seem applicable here in the event the jury determined that Margaret Orr had had ample time to bring her car to a stop after first observing the truck stopping in front of her car.

In Geisen v. Luce, *supra,* we stated (185 Minn. 485, 242 N. W. 11):

"* * * Even though the standing of a car on the highway may be unlawful, yet the wrongful standing cannot be the proximate cause of an accident unless it results from the standing. While such standing may be the occasion or condition, it is not in a legal sense a contributing proximate cause of the accident. * * * The 'standing' of the Ferris car did not set Luce's negligence in operation nor concur therein. This accident resulted from Luce's excessive speed, his indiscretion in not having his car under control in anticipation of southbound traffic, and his failure to appreciate the impending danger."

In the Medved case we stated (220 Minn. 361, 19 N. W. [2d] 793):

"We have not held in any case that there is liability under a similar fact situation. Where we have held the leaving of an automobile or other object on a highway to be the proximate cause of a collision with it by an automobile, the accident occurred at night under circumstances obscuring the view of the driver of the colliding car, such as darkness, fog, mist, rain, smoke, curves, hill, and other factors."

In the light of these authorities, we are of the opinion that the trial court did not err in giving instruction No. 1 above referred to.

■ The second instruction complained of was:

"If you find that the only evidence of negligence on the part of Alex Leonard and Standard Oil Company was that Leonard parked the truck in violation of the statute in failing to leave twenty feet of the traveled portion of the highway opposite the parked truck, but if you further find such parking was excusable or justifiable under all the facts and circumstances as brought out in the evidence, then said violation of said statute would not constitute a negligent act and there could be no verdict against Alex Leonard or Standard Oil Company based upon a violation of said statute."

We do not find any error in this instruction. While stopping the truck on the highway in the manner above described constituted a violation of § 169.32, nevertheless, by virtue of § 169.96, such violation does not constitute negligence per se but prima facie evidence of negligence only.[4]

We have held in numerous decisions that violation of a motor vehicle statute may constitute a negligent act in the absence of excuse or justification therefor, but when evidence of the latter appears it is for the jury to determine whether such statutory violation constitutes negligence. Becklund v. Daniels, 230 Minn. 442, 42 N. W. (2d) 8; Lee v. Molter, 227 Minn. 557, 35 N. W. (2d) 801; Olson v. D. M. & I. R. Ry. Co. 213 Minn. 106, 5 N. W. (2d) 492. The rule is well expressed in Demmer v. Grunke, 230 Minn. 188, 193, 42 N. W. (2d) 1, 5, as follows:

"* * * A statutory violation constituting prima facie evidence of negligence prevails as a controlling evidentiary factor against the violator only so long as there is an absence of evidence tending

---

[4]M. S. A. 169.96 provides:

"In all civil actions, a violation of any of the provisions of this chapter, by either or any of the parties to such action or actions shall not be negligence per se but shall be prima facie evidence of negligence only."

to show a reasonable ground for such violation or only so long as there is no actual evidence to justify a reasonable assumption that such violation was not negligent under the circumstances * * *."

It is true that the jury was somewhat confused by the instruction. Its foreman requested advice as to whether the truck driver's *conviction* that the described movements were in the best interests of safety in itself constituted justification for his actions so as to excuse his violation of the statute even though others might deem hazardous the course taken. The court did not clarify this point when requested, and this may have led to the result now challenged. However, the instruction in itself was clear. It did not state that the driver's conviction that his course was justifiable would in itself constitute an excuse of the statutory violation. The test would not be the driver's belief that his statutory violation was in the best interests of safety, but rather whether, in the light of all facts and circumstances, his actions in violating the statute in the interests of safety were such as would have been taken by an ordinarily prudent person acting under like conditions. Staloch v. Holm, 100 Minn. 276, 111 N. W. 264, 9 L.R.A.(N.S.) 712; Krippner v. Biebl, 28 Minn. 139, 9 N. W. 671; Schell v. Second Nat. Bank, 14 Minn. 34 (43); Glynn v. Krippner (8 Cir.) 60 F. (2d) 406; 4 Dunnell, Dig. & Supp. § 6970; Holmes, The Common Law, p. 108. Obviously, under the instruction the jury might well have concluded that the driver's actions were not such as would have been taken by an ordinarily prudent person and that his personal convictions in the matter did not excuse the statutory violation. This being true, the instruction cannot be held erroneous.

The third instruction complained of was:

"If from the evidence you find that the Standard Oil Company truck was parked on the north end of the bridge on its own side of the highway during all the time that Mrs. McHardy traveled the quarter of a mile south of the bridge, then, and in that event, your verdict should be in favor of the defendants Alex Leonard and Standard Oil Company."

The premise upon which this instruction is based is not in accord with the testimony of defendants' witnesses and, of course, is in direct conflict with that of the witnesses for plaintiff. Leonard testified that, when he first observed the McHardy car at the crest of the hill, the truck was still in motion, and thereafter proceeded forward some 15 to 17 feet at a crawl before it finally came to a stop. During this interval Mrs. McHardy had passed the crest of the hill and must have proceeded some distance downgrade toward the bridge before the truck came to a stop. She testified that she did not observe the Orr car until she had reached the bridge and concedes that it was then just rounding the curve, fixed at some 800 feet distant north of the bridge. Margaret Orr and other occupants of her car testified that as the Orr car rounded this curve the truck was still in motion and so continued for some time thereafter. Clearly it could not have been stationary during the entire period in which the McHardy car traveled downgrade to the bridge after it had passed the crest of the hill, the hypothesis which constitutes the basis of the challenged instruction.

An instruction must not assume the existence of facts in controversy (Larkin v. City of Minneapolis, 112 Minn. 311, 127 N. W. 1129), nor place too much emphasis on particular facts (State v. Maddaus, 137 Minn. 249, 163 N. W. 507), nor on the testimony of particular witnesses (Gibbon Farmers Elev. Co. v. Herschmann, 160 Minn. 326, 200 N. W. 293). It should not lead a jury to suppose it might find a fact where there is no evidence to justify it. Rugland v. Tollefsen, 53 Minn. 267, 55 N. W. 123. It is improper to base an instruction upon a hypothetical statement of the facts where there is no evidence in its support or to indicate that a jury may draw inferences from facts not in evidence. Novotny v. Bouley, 223 Minn. 592, 27 N. W. (2d) 813; Hughes v. Meehan, 81 Minn. 482, 84 N. W. 331.

Based upon the foregoing analysis and authorities, we must agree with the trial court's subsequent conclusion that this instruction, being inconsistent with the facts, "misled the jury and practically

precluded them from bringing in a verdict against the Standard Oil Company, even if the jury had found that the illegal parking of the Standard Oil truck * * * was the proximate cause of plaintiff's injuries." The order appealed from is affirmed.

Affirmed.

KNUTSON, JUSTICE (dissenting).

I dissent.

A new trial was granted because the court considered the following instruction reversible error:

"If from the evidence you find that the Standard Oil Company truck was parked on the north end of the bridge on its own side of the highway during all the time that Mrs. McHardy traveled the quarter of a mile south of the bridge, then, and in that event, your verdict should be in favor of the defendants Alex Leonard and Standard Oil Company."

The evidence in this case is conclusive that the Orr car was traveling faster in approaching the bridge than was the McHardy car. It must follow that, if the Standard Oil Company truck was parked while the McHardy car traveled a quarter mile in approaching the bridge, it was so parked while the Orr car traveled more than a quarter mile in broad daylight. In McHardy v. Standard Oil Co. 231 Minn. 493, 499, 44 N. W. (2d) 90, 94, a companion case arising out of the same accident, we said:

"If we were to accept Mrs. McHardy's testimony that the truck was parked on the north end of the bridge on its side of the highway during all the time that she traveled the quarter mile south of the bridge, such parking in broad daylight would not be the proximate cause of plaintiff's injuries [citing and following Geisen v. Luce, 185 Minn. 479, 242 N. W. 8]."

If that statement is the law, there could be no error in the above instruction. I cannot see how we can consistently approve instructions Nos. 1 and 2 set forth in the majority opinion and hold that the one on which the trial court based the order granting a new

trial is reversible error. It seems obvious to me that, if the jury believed the testimony establishing the fact that the truck remained parked while the McHardy car traveled a quarter mile, it necessarily rejected the contrary testimony of other witnesses. I cannot see how the jury could have been misled by this instruction. If it believed the testimony establishing that the truck was parked all the time the McHardy car traveled the quarter mile south of the bridge, it would have to disbelieve the testimony of the witnesses who said that the truck was moving as the Orr car approached the bridge. In view of the fact that the evidence conclusively shows that the Orr car traveled faster than the McHardy car in approaching the bridge, both contentions could not be true. If the jury believed one of two inconsistent claims, it must follow that it rejected the other. That is all that the above instruction amounted to, and I think it was properly given.

MR. JUSTICE ROGER L. DELL, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.