FENTON E. SACKETT v. RAY L. HAECKEL, SPECIAL ADMINISTRATOR OF ESTATE OF GRACE SCHAFER, AND ANOTHER.
PAUL HORNI, APPELLANT.

81 N. W. (2d) 833.

March 22, 1957—Nos. 37,041, 37,071.

---

[2]Hanson v. Homeland Ins. Co. 232 Minn. 403, 45 N. W. (2d) 637; Lee v. Lee, 248 Minn. 496, 80 N. W. (2d) 529.

*Meagher, Geer, Markham & Anderson, David W. Nord,* and *O. C. Adamson II,* for appellant.

*English & Velta,* for respondent.

NELSON, JUSTICE.

Defendant Paul Horni appeals to the supreme court both from an order denying his motion for judgment in his favor on the issue of contributory negligence and for a new trial on the issue of damages alone and also from judgment entered in favor of defendant Ray L. Haeckel, special administrator of the estate of Grace Schafer.

An action was originally brought by Fenton E. Sackett, the driver of a tractor-trailer, for damages arising out of a collision between his truck and a Packard automobile owned by Paul Horni and driven by Grace Schafer. Grace Schafer later died due to injuries growing out of the collision. Horni's car was demolished and he sustained injuries to his person. The special administrator of the estate of Grace Schafer and Paul Horni, the owner of the Packard automobile, were named as defendants. Horni later counterclaimed against Sackett and cross-claimed against the Grace Schafer estate. A settlement was effected with Sackett which left only the claim of Horni against Sackett and the Schafer estate for litigation.

It is undisputed that Grace Schafer in driving the Packard automobile had done so alternately and with the owner's permission and consent, other than as may have appeared in certain contents of a book in which Horni had written about the matter after the acci-

dent, extracts of which were introduced in evidence, indicating that he did not alternate as driver on the return trip from Deadwood, South Dakota. In that respect there is a conflict in the evidence.

Fenton E. Sackett operated a trucking business out of Madelia, Minnesota, at the time of the accident. It appears that Horni was a resident of Newark, New Jersey, age 66 when the accident occurred, and interested in what is know as the Microtone Company. His business activities kept him moving about various places in the United States, including the Twin Cities and other points. Grace Schafer was an employee of the Graybar Electric Company of Cincinnati, Ohio, and a resident of that city. Her age was 60 years.

Paul Horni and Grace Schafer were engaged to be married and planned to be married in Deadwood, South Dakota, during his expected vacation of July 25 through July 31, 1954. She had flown from Cincinnati to join him in Minneapolis. Upon her arrival she learned that, because of a business emergency, Horni could not take his vacation as planned, his employer requiring that he fly to New York on Monday, July 26, to take care of certain business matters. He decided nevertheless to make use of the weekend remaining by driving to Deadwood for the purpose of looking into a business matter of his own. Grace Schafer, his fiancee, accompanied him as his invited guest. Their marriage was temporarily postponed.

The distance between Minneapolis and Deadwood was 622 miles. They left on the trip early Friday evening, July 23. They took turns driving on the trip to Deadwood, alternating hourly, arriving there between 9 and 11 a. m. on Saturday morning. Plaintiff consulted with some business associates in the afternoon, and they slept at one of the local hotels that night. After spending the day in Deadwood on Sunday, they had an early supper and left for Minneapolis at 5:30 p. m. planning to drive all night unless they became too tired. Again, according to Horni's own testimony at the trial, they alternated driving, hourly, as before. They made three or four stops for gas en route, stopping for a full dinner about 11 p. m. and at later intervals for coffee.

While Horni was riding in the seat beside the driver at about 5:30 a. m. on Monday morning Grace Schafer awoke him and asked him to clean the windshield on account of bugs and insects which had been encountered during the night. This job took him from 10 to 15 minutes. While he was so engaged, Grace Schafer got out and walked around. Horni testified that, before starting again, she said to him that "I am going to continue driving and I will wake you when you can take over." He further testified that he had no recollection of the event immediately before the accident and surmised that he dozed off or was resting when the accident occurred. He states that he neither felt the impact nor heard it.

The closeup facts of the accident were obtained from Mr. Fenton Sackett. He testified that, while he was driving his tractor-trailer west on Highway No. 14 at from 40 to 45 m. p. h., a few miles west of Tracy, Minnesota, he first saw Horni's Packard approaching from the opposite direction. The area was fairly level, the highway straight, with a 20-foot pavement and shoulders of approximately eight feet on each side and ditches to the outside sloping down to a depth of about two feet. Sackett, however, described the driving surface as being bumpy, and due to that condition it was not possible to drive his unit faster than 40 to 45 m. p. h. in the area. He further states that when he first saw the Packard it was on its right side of the highway, coming pretty fast, and that there was no other immediate traffic on the highway except an automobile approaching a considerable distance behind the Packard. In his description of the collision he states that the approaching Packard swerved across the center line into his traffic lane and that this suddenly occurred when the two vehicles were approximately 100 feet apart. Sackett testified that he applied no brakes but angled his truck to the right until the front, outside wheels reached the shoulder and that, while it was in that position, the vehicles collided left front to left front; that he continued on to a stop on the north shoulder, the Packard side swiping most of the length of the tractor-trailer, ending up east of the point of collision in the south ditch. Each vehicle came to a stop 60 to 70 feet or thereabouts from the point of impact. The

Packard was in the ditch up against the fence on the south side of the pavement, facing northerly. Horni was found lying to the west of the Packard and Grace Schafer to the east of it, opposite the door on that side. Horni, however, testified that Grace Schafer was driving at the time of the collision. Sackett was unable to state which of them was in the driver's seat at the time the collision occurred.

After the case was closed, the trial court directed a verdict for Sackett and in its charge to the jury, on the basis of its having been admitted that Grace Schafer was the driver at the time of the accident, ruled that she was negligent as a matter of law; that her negligence was the proximate cause of the accident, submitting to the jury the issue of Horni's contributory negligence while riding as a passenger at the time of the collision. The jury returned its verdict in favor of the Grace Schafer estate.

Horni on his double appeal assigns error as follows: That the court erred in submitting the issue of his contributory negligence to the jury; that Horni was entitled to be held free of contributory negligence as a matter of law; and that the court further erred in refusing to give the instructions requested, referred to as Nos. III, IV, and IX in the record.

It is clear that the main purpose of the assignments are directed to bringing one basic issue before this court, namely, did the trial court commit error in submitting the issue of Horni's contributory negligence to the jury. Viewed in a different light, is the evidence sufficient to support the jury's determination that Horni was contributorily negligent?

Horni questions the sufficiency of the evidence to support the jury's determination that he was contributorily negligent, preventing his recovery. Contributory negligence was the only issue submitted by the trial court to the jury, and an examination of the court's charge, as well as the memorandum attached to its order, indicates that it considered the gist of the issue of contributory negligence to be whether Horni was negligent in going to sleep and permitting Grace Schafer to drive under all the facts and circumstances involved.

Horni contends that there is no evidence that would support a jury finding that Grace Schafer was sleepy; that he knew it if she was in fact sleepy; or that the accident occurred because she, as the driver, went to sleep. Horni therefore argues that because such a situation exists there can be no contributory negligence attributable to him, nor can the jury infer from the circumstances (though somewhat unusual and peculiar) even in the light of their presentation, that he may have been contributorily negligent.

In other words, in presenting the argument in behalf of Horni's freedom from contributory negligence on this appeal, it was in effect and ultimately contended that there is no evidence to sustain any one of three elements necessary to support a finding of negligence on his part, which it may be said are: (1) Knowledge of any existing hazard; (2) opportunity to avoid the hazard; and (3) voluntary choice to incur the risk of the hazard.

In support of these contentions numerous cases are cited and discussed in Horni's brief bearing upon the issue of contributory negligence where automobile passengers have been injured in accidents while riding as invited guests of the owner or driver. While helpful, these cases may be readily distinguished on the facts when considering the peculiar circumstances involved in the present case. Excepting the case of Hardgrove v. Bade, 190 Minn. 523, 252 N. W. 334, none involve automobile occupants asleep, nor sleeping as negligence on the part of the passenger in an automobile, or fatigue or sleepiness on the part of the driver.

The case of Hubenette v. Ostby, 213 Minn. 349, 6 N. W. (2d) 637, is cited by the Schafer estate. This case deals with duties of an automobile guest as to his own personal safety and submission of the issue of contributory negligence to the jury. Contributory negligence was pleaded as a defense in that case. Plaintiff, as passenger, because of defendant's driving speed, had cautioned him several times about it. The driver continued his speed, plaintiff stating in effect that he had to stay in and take his chances. Mr. Chief Justice Gallagher speaking for the court commented on the duties of a passenger riding as an invited guest in the automobile of another in their

application to the facts of that case, stating (213 Minn. 352, 6 N. W. [2d] 639) :

"It is the duty of a passenger or guest in an automobile to exercise ordinary care for his own safety. He must do the things to assure his safety that an ordinarily prudent person would do under the same or like circumstances. * * * Usually it is for the jury to say whether the circumstances command action on his part and, if so, how much action. * * * The experience and skill of the driver, his physical condition, the condition of the car, the time of the day or night, the condition of the highway, weather conditions, and the amount of traffic are all circumstances that may be considered. The court cannot lay down a mathematical precept as a rule of law stating in detail what should be said or done or omitted at every juncture of danger. That responsibility is ordinarily for the triers of fact."

We cannot escape the impression when viewing the history of the trip in the instant case that the three elements urged as governing factors must all be resolved on the factfinding side. The triers of fact might well draw the inference of negligence from a set of facts which disclose an attempt to drive from Minneapolis, Minnesota, to Deadwood, South Dakota, and return, a total distance of 1,244 miles, in a period of time so limited that it required the occupants to drive two full nights and apparently two part days to complete the whole trip with but one night's rest in between.

The question determinative of the outcome of this case is whether the evidence supports Horni's contention that the trip as planned and executed up to the time of the accident on the early morning of Monday, July 26, entitles him as the owner of the automobile to be held free from contributory negligence, as a matter of law, while riding as a passenger therein, in going to sleep, when either he must have known or should have known that his invited guest, who had undergone the pressure of the hurried trip and alternated as driver, might also be overtaken by fatigue and sleepiness such as the testimony indicates he encountered. Since this is an action against the driver of an automobile by the owner, who was a passenger therein, the fact that the owner was present would not under the evidence

submitted bar his action on the ground that the driver's negligence would be imputed to him, but the question of the owner's contributory negligence would under the circumstances involved be for the jury on conflicting evidence.[1]

The issue of the contributory negligence of Horni, in the role of passenger, must be determined in the light of the circumstances presented by the record.

■ As we understand the decisions, a passenger is not necessarily guilty of contributory negligence if he goes to sleep, but he may be found so if there were any peculiar circumstances which would indicate to a reasonable person the necessity to stay awake and remain alert for his own protection.

There is no Minnesota case involving sleepiness where the facts are closely analogous to the facts in the case at bar. However, a case decided by this court bearing some similarity to the fact situation here is Hardgrove v. Bade, *supra*. That decision indicates the type of evidence which may properly give rise to an inference that a driver was sleepy. In that case plaintiff and defendant had left Minneapolis for Bismarck, North Dakota, in the early evening of September 4, 1931. The intention was to make the trip of about 430 miles without stopping except for gasoline and food. The defendant drove all the way. Three times during the journey, plaintiff, while riding as a gratitous guest in the automobile owned and driven by defendant, had asked him if he wanted her to drive, apparently because of her fear that he was becoming sleepy. Each time he had refused. Shortly before the car became involved in an accident, plaintiff again suggested that she be permitted to drive, but she was again refused, defendant assuring her that he was all right. Upon this assurance she closed her eyes, but she did not know whether she had gone to sleep or not when the accident occurred which resulted in injuries to her. The trial court upon the facts of that case submitted defendant's negligence and plaintiff's contribu-

---

[1]Jacobsen v. Dailey, 228 Minn. 201, 36 N. W. (2d) 711, 11 A. L. R. (2d) 1429; Frankle v. Twedt, 234 Minn. 42, 47 N. W. (2d) 482; Urquhart v. McEvoy, 204 Misc. 426, 126 N. Y. S. (2d) 539; Dosher v. Hunt, 243 N. C. 247, 90 S. E. (2d) 374.

tory negligence to the jury. The jury found for the plaintiff on the issue of contributory negligence. This court held that the evidence was sufficient to absolve plaintiff from the charge of contributory negligence, but made it clear that, based upon the evidence in the case, the plaintiff's contributory negligence was for the jury's determination, applying the rule that "The test of ordinary or reasonable care is the degree of care which persons of ordinary prudence usually exercise under similar circumstances."[2]

An examination of the authorities in this state and elsewhere lead us to the conclusion that the majority of courts have held that, where the guest has no reason to apprehend danger and goes to sleep, the sleeping does not render the guest contributorily negligent as a matter of law but the question of contributory negligence is properly for the jury, which in most instances have found in favor of the sleeping guest.[3] A frequently cited case where a guest passenger was asleep at the time of accident is Lea v. Gentry, 167 Tenn. 664, 73 S. W. (2d) 170. That case involved a 335-mile automobile trip from Nashville, Tennessee, to Asheville, North Carolina, and return. The guest accompanied the driver at his request, the driver being the agent of the owner of the car and engaged to drive it and deliver certain papers for the owner at the latter point. The guest and the driver alternately drove and slept under the arrangement that, when the one driving became sleepy, he would let the other drive. The guest fell asleep and he was asleep when the driver fell asleep and ran the automobile into a ditch, resulting in injuries to the guest. The court in that case held that the circumstances disclosed by the evidence did not establish contributory negligence on the part of the guest as a matter of law. That case states that a court may adjudge contributory negligence as a matter of law when facts show without dispute that guest was conscious of peril inherent in the driver's condition or conduct, but that, where the evidence is in conflict or reasonable minds might differ as to the effect of undisputed facts which the situation discloses relating to the consciousness or

[2]13 Dunnell, Dig. (3 ed.) §§ 6970, 7012.
[3]17 Minn. L. Rev. 222.

knowledge of the guest of the peril involved in either the condition or the conduct of the driver, then that question is for the jury.

■ We think the applicable law, under the majority rule, is that evidence showing that the guest passenger in an automobile was asleep at the time of the accident does not establish contributory negligence as a matter of law; that the question ordinarily remains for the determination by the jury, as one of fact, unless the facts and circumstances clearly establish that there is no causal connection between the guest's sleeping and the accident.

A reference to several textbooks and numerous cases therein cited and discussed convinces us that the matter of a guest passenger's contributory negligence under such facts and circumstances as appear in the case at bar is a jury question. In 5 Berry, Automobiles (7 ed.) § 5.186, the author comments as follows:

"There is no hard and fast rule by which it may be determined whether a guest in an automobile is negligent in falling asleep, the question being generally one for the jury, depending on the guest's knowledge of the driver's qualifications, traffic conditions likely to be encountered, whether extraordinary situations will arise, and similar circumstances.

"An automobile passenger is not guilty of contributory negligence as a matter of law, in voluntarily going to sleep at night where both he and the driver are sober and traveling over a road with which both are familiar, and the driver is operating his own car and has been driving in an orderly manner and at a reasonable rate of speed."

In 4 Blashfield, Cyc. of Auto. Law and Practice (Perm. ed.) § 2432, the author says:

"It does not necessarily show negligence on the part of a passenger in an automobile that he was sleeping before and at the time of an accident caused by the negligence of the driver which results in injury to such passenger. However, a passenger cannot escape the obligation of due care whenever the occasion arises for its exercise, on the plea of having fallen asleep, if an ordinarily prudent person would not have fallen asleep under the same or similar cir-

cumstances. As said by a Louisiana Court of Appeal, quoting the foregoing statement of the law, the question whether such action on the part of the guest is negligence depends on the facts and circumstances of each case."[4]

The evidence is clear that Horni was the owner of the automobile; that Grace Schafer, his fiancee, was his invited guest passenger; that the hurried trip involving night driving was made to promote the owner's business and convenience solely, both as to the arrival at Deadwood and the scheduled return to the Minneapolis airport on the next Monday morning. The matter of alternating hourly in driving, on both legs of the journey, was arranged for the benefit of the owner of the automobile and not, so far as the record discloses, for the benefit of the invited guest passenger who undertook to alternate as driver.

The evidence fails to show a case of joint enterprise. The mission was wholly that of Horni, the owner, with Grace Schafer occupying the legal position of an invited guest. Whether by invitation or otherwise she entered into the arrangement to drive alternately during the trip, it must be concluded she willingly acceded thereto as his invited guest. The evidence equally fails to show that Grace Schafer was a fellow servant, but again points to her as the invited guest of the owner, even though she alternated as driver.

We have carefully considered the court's charge to the jury as well as appellant's requested instructions which were not given, to which rulings exceptions were duly taken. There is no claim that the charge was not otherwise complete and correct. No other exceptions were taken thereto. We find no prejudicial error in refusing the proffered instructions. Other issues were raised and discussed in the briefs. Since not relevant to the issues decided herein, they have not been considered. The record sustains the jury's verdict, the order of the court below, and the judgment entered thereon.

Affirmed.

---

[4]Quoted by the court as correctly stating the law in Weddle v. Phelan (La. App.) 177 So. 407; also, see, Thompson v. Cormie (5 Cir.) 220 F. (2d) 692.